Gary Johnson appeals from his conviction in the Dayton Municipal Court of obstructing official business in violation of City of Dayton R.C.G.O. § 131.02.
In a single assignment of error, Johnson contends the trial court erred in denying his acquittal motion made at the conclusion of all the evidence.
On February 6, 1998, at approximately 1:45 a.m., Officer Anthony Morlan and his partner, Officer Ronald Bowling, of the Dayton Police Department were dispatched to 1222 Salem Avenue, in Dayton, on a domestic violence call with an anonymous report of a male and female fighting in the downstairs apartment.
Upon arrival Morlan and Bowling knocked and identified themselves as Dayton Police Officers and requested to speak to the people inside. Johnson responded to the officers through the door, ordering them to go away and informing them that he was not going to let them in. (Tr. 5). The officers explained to Johnson the Department's policies and procedures concerning domestic violence calls and the fact that they needed to remain on scene until they were able to verify the physical well-being of all individuals involved, but Johnson refused to answer any questions and refused to open the door and allow the officers to verify the occupant's safety.
Morlan stated he could hear Johnson mumble something to someone else in the apartment, however he was unable to discern what he said. Morlan was able to determine that the other voice belonged to a female. Officer Morlan requested that the female inside come and speak to him so that he could verify her safety, however Johnson stated he "wasn't going to allow that." (Tr. 6).
At that point Officer Morlan contacted his supervisor, Sergeant Charles Richardson, for the purpose of supervising the forced entry into the apartment. (Tr. 6 and 23). In order to successfully complete a forced entry, Officer Morlan requested additional officers respond to the scene. (Tr. 6 and 7). A total of four officers and a sergeant had to be summoned to the scene. (Tr. 7). Morlan testified that he considered the defendant's refusal to let him check out the safety of the female occupant an impediment to his duties as a police officer. (Tr. 7).
Sergeant Richardson attempted to make contact by speaking through the door, but the appellant failed to respond. (Tr. 18). Consequently, Sergeant Richardson and Officer Bowling went to a window of the apartment, moved the curtain, and were able to ascertain the layout of the room. (Tr. 19). It was a studio apartment. (Tr. 33). Sergeant Richardson testified that when he looked into the apartment he did not see any occupants.
Finally, approximately one hour after the arrival of Officers Morlan and Bowling and forty minutes after the sergeant and two additional officers arrived, the lessee of the apartment returned home and admitted the officers into the apartment. Once inside, Officer Morlan observed the appellant and the female, Michelle Crosley, sitting at the end of the bed, which was located next to the window the officers looked through earlier. Ms. Crosley was observed to be highly upset and visibly shaken. (Tr. 8). Officer Morlan testified that she suffered a split lip and had a clump of hair pulled out of her head. (Tr. 8).
The appellant was removed from the scene and placed under arrest for both assault and obstructing official business.
The trial court overruled defendant's motion for acquittal filed pursuant to Crim.R. 29. Michelle Crosley took the stand for the defense. She stated she was engaged in very heated sexual intercourse with Johnson. Ms. Crosley testified that she did not know officers were outside when she heard the initial knocking at the door. Accordingly, she and Mr. Johnson did not discontinue their activities. She stated she began to get dressed when a flashlight was shined through the window. When the officers entered the apartment, Ms. Crosley said she was wearing only a top.
Mr. Johnson testified that when he heard the knocking at the door he believed it was his brother-in-law joking around with him and Ms. Crosley. He corroborated Ms. Crosley's testimony. He stated he stopped the sexual activity when he saw the flashlight in the window. As Mr. Johnson and Ms. Crosley start to get dressed, Mr. Johnson asked the officer "why do I have to open the door anyway? What did I do . . . What is going on?" (Tr. 38). Defense counsel renewed the motion for acquittal pursuant to Crim.R. 29. (Tr. 45). The trial court found Mr. Johnson guilty. (Tr. 48).
Appellant argues that the police officers were not conducting lawful duties when they demanded that he open the apartment door. Johnson argues that he acted "with privilege" in refusing to open the door. He argues that he had a constitutional right to refuse the officers warrantless entry into the apartment.
The State argues that the question of whether the officers acted constitutionally should have been raised by a pretrial suppression motion. We disagree. The defendant was not seeking to suppress evidence, but instead he was raising a defense to the crime charged. See, Crim.R. 12(B)(3).
The State argues that the trial court properly overruled the Crim.R. 29 motion as the police officers were acting lawfully in investigating the report of a domestic fight in the apartment. The State argues that "exigent" circumstances existed for entering the apartment without a search warrant. The State argues that when the defendant refused to open the door to them to check on the safety of those inside, he obstructed official business. R.C.G.O. § 131.02 provides that no person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties.
We agree with the State that it was perfectly reasonable for the officers to inquire if the occupants of the apartment were safe after receiving the anonymous report of a male and female fighting inside the apartment.
Once the officers knocked and identified themselves, and informed the defendant why they were there, it was not unreasonable that the defendant open the door so the officers could satisfy themselves of the safety of those inside the apartment. The defendant also clearly obstructed Officer Morlan's attempt to communicate with the female occupant of the apartment.
The United States Supreme Court has acknowledged, "the need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." Mincy v. Arizona (1978), 437 U.S. 385,392-393.
 Fires or dead bodies are reported to police by cranks where no fires or bodies are to be found. Acting in response to reports of "dead bodies," the police may find the "bodies" to be common drunks, diabetics in shock, or distressed cardiac patients. But the business of policeman and fireman is to act, not to speculate or meditate on whether the report is correct. People could well die in emergencies if police try to act with the calm deliberation associated with the judicial process.
Wayne v. United States (D.C. Cir. 1963), 318 F.2d 205.
The exigent circumstances exception to the warrant requirement applies when the police have a reasonable basis to believe someone inside the premises requires immediate aid.Parma v. Jackson (1989), 58 Ohio App.3d 17, 18. When the officers in question have reasonable grounds upon which to believe that an emergency exists, they have a duty to enter the premises and investigate, provided that the warrantless search is "strictly circumscribed by the exigencies which justify its initiation." State v. Applegate (1994), 68 Ohio St.3d 348, 350
(quoting Terry v. Ohio (1968), 392 U.S. 1, 26). Reasonable belief is assessed from the facts and circumstances known the officers from their point of view. State v. Robinson (1995),103 Ohio App.3d 490,496.
We believe that the police officers in this case had a reasonable basis for believing that an occupant of the apartment was in need of assistance. The anonymous phone call coupled with the defendant's refusal to permit the police officers an opportunity to speak with the female occupant provided a reasonable basis for them to believe the female occupant was at risk of injury.
The defendant's actions in response to the officers' requests supported the trial court's determination that he obstructed official business in violation of the ordinance. The assignment of error is overruled.
Judgment of the trial court is Affirmed.
YOUNG, J., concurs.